FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ JAN 11 2012

SUMMONS ISSUED

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RADCLIFF SMITH

                        Plaintiff,

                        Docket No.:

**CV12 - 137**

-against-

THE CITY OF NEW YORK, POLICE OFFICER
STEVEN FADUGBA (NYPD) SHIELD #40340,
POLICE SERGEANT PERRY STEWART (NYPD)
POLICE CAPTAIN JOHN DOE # 1 (NYPD)
POLICE OFFICER JOHN DOE # 2 (NYPD)
POLICE OFFICER JOHN DOE # 3 (NYPD)
POLICE OFFICER JOHN DOE # 4 (NYPD)
POLICE OFFICER JOHN DOE # 5 (NYPD),
(THE NAME JOHN DOE BEING FICTITIOUS,
AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN),

                        Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

GLASSER, J.

POHORELSKY, M.J.

-----------------------------------------------------------------X

      The Plaintiff, complaining by his attorney(s), THE BLANCH LAW FIRM, P.C., respectfully shows to this Court and alleges:

### JURISDICTION

1. Jurisdiction is founded upon the existence of a Federal Question.

2. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Sections 1983 and 1981 and arising under the law and statutes of the State of New York.

3. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the First, Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

4. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Eastern District of New York.

## THE PARTIES

5. Plaintiff RADCLIFFE SMITH resides in the Brooklyn, NY, and at all times relevant herein, lived in Brooklyn, NY.

6. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

7. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT, including all the police officers thereof.

8. Upon information and belief, at all times hereinafter mentioned, Defendant POLICE OFFICER STEVEN FADUGBA, Defendant POLICE SERGEANT PERRY STEWART, Defendant POLICE CAPTAIN JOHN DOE # 1, and POLICE OFFICERS JOHN DOE

#2-5 were employed by the Defendant, CITY OF NEW YORK, as members of its police department.

9. Upon information and belief, at all times hereinafter mentioned, Defendant POLICE OFFICER STEVEN FADUGBA, Defendant POLICE SERGEANT PERRY STEWART, Defendant POLICE CAPTAIN JOHN DOE # 1 and POLICE OFFICERS JOHN DOE # 2-5 worked at the 63rd Precinct, 1844 Brooklyn Avenue, Brooklyn, New York, 11210.

10. The NEW YORK CITY POLICE DEPARTMENT is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the POLICE COMMISSIONER OF THE NEW YORK CITY POLICE DEPARTMENT is responsible for the policies, practices, and customs of the NEW YORK CITY POLICE DEPARTMENT as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

11. This action arises, inter alia, under the United States Constitution, particularly under provisions of the First, Fourth, Eighth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

12. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

13. On or about January 13, 2009, near East 55th Street in Brooklyn, New York and upon information and belief, Defendant Officer Steven Fadugba pulled over a 2005 Cadillac Escalade driven by Plaintiff, Radcliffe Smith, for allegedly "failing to stop at two steady red lights," **Plaintiff's Exhibit A.**

14. When Defendant Fadugba signaled for Plaintiff to stop the vehicle, he did so.

15. According to Defendant Fadugba, at the stop he " observed Plaintiff's slurred speech, bloodshot eyes and perceived a strong smell of alcohol on Plaintiff's breath," **Plaintiff's Exhibit A.**

16. According to Defendant Fadugba, Plaintiff produced his driver's license upon request, submitted to two separate breathalyzer tests, with results of .151 and .150, respectively, and informed Defendant Fadugba that he, Plaintiff, "was leaving Footprints Lounge," **Plaintiff's Exhibit A.**

17. Plaintiff was transported to Brooklyn's 63rd precinct, formally placed under arrest, his persons searched and his vehicle forfeitured and searched.

18. After Plaintiff's arrival at the 63rd precinct, Brooklyn, New York. Plaintiff, Radcliffe Smith, was informed that upon internal inspection of his vehicle 2 glassine envelopes of alleged marijuana, 1 alleged marijuana cigarette and 1 RadioShack radio frequency scanner had been found in his vehicle.

19. Upon a search of Mr. Smith's person by Defendant Fadugba, personal identification, keys, a wallet and approximately $400.00 in United States Currency was confiscated incident to the Plaintiff's arrest.

20. Upon information and belief, the source being Plaintiff Radcliffe Smith, while in the 63rd precinct's holding cell Mr. Smith witnessed Defendant Fadugba place Smith's wallet into Fadugba's back pocket.

21. After being in a 63rd precinct holding cell for approximately 20 minutes, Mr. Smith witnessed other detainees who were brought in both before and after him receiving "Property Clerk Slips" for their individual wallets, keys, and United States Currency, which triggered Mr. Smith to inquire about the status of his wallet, money and/or Property Clerk's Slip from Defendant Fadugba.

22. Defendant Fadugba told Plaintiff to "shut up" and that his wallet was "okay." Plaintiff inquired why his wallet was still in Defendant Fadugba's back pocket and commented "You must do that a lot."

23. Defendant Faduga briefly left the holding area and returned to grab Mr. Smith by the throat while ordering him out of the holding cell and down a hallway into another vacant holding cell.

24. Immediately, upon entry into the second holding cell at the 63rd Precinct, Defendant Fadugba choked Plaintiff, at which point 3-4 additional officers, Officer John Doe # 2, Officer John Doe # 3, Officer John Doe # 4, and Officer John Doe # 5 rushed into the holding cell and began punching Mr. Smith about the face and body until he fell to the floor.

25. Upon falling to the floor Mr. Smith began to feel multiple kicks and punches to his face and body area from Defendant Fadugba and Officer John Doe # 2, Officer John Doe # 3, Officer John Doe # 4, and Officer John Doe # 5.

26. After Mr. Smith's repeated pleas for mercy, Defendant Fadugba and Officer John Doe # 2, Officer John Doe # 3, Officer John Doe # 4, and Officer John Doe # 5 left Mr. Smith on the floor of the second holding cell bleeding from his nose and mouth, suffering excruciating head pain, experiencing sharp pain from the top of his head to his lower chin, and having aches along various parts of his body.

27. After being assaulted Mr. Smith began to "feel like he was dying due to the pain that he felt from various parts of his body and the breathing problems that he was experiencing." Mr. Smith attempted to cry out for help but was unable to do so loudly due to jaw pain, trouble breathing and head pain.

28. Approximately 30-40 minutes after being assaulted and Mr. Smith's attempted cries for help, an officer who seemed to have been newly arrived for shift duty at the 63rd precinct (Officer John Doe # 6) came to Mr. Smith's aid.

29. Before administering care to Mr. Smith, Officer John Doe # 6, was heard "arguing" with someone who sounded like Defendant Fadugba, saying "No, this is not right, No."

30. Defendant Sergeant Perry Stewart was Defendants Fadugba, Officer John Doe # 2, Officer John Doe # 3, Officer John Doe # 4, and Officer John Doe # 5's immediate supervisor on January 13, 2009 and supervised the Plaintiff's arrest and processing as well as signed all police reports generated by Plaintiff's arrest.

31. Officer John Doe # 6 came into the holding cell and asked if Mr. Smith was "alright" and ultimately called an ambulance for Mr. Smith to be transported out for medical treatment at Kings County Hospital Center.

32. Upon being seen by medical staff at Kings County Hospital Center, it was learned that Mr. Smith suffered a major jaw line fracture that required his jaw to be wired shut for 8

weeks, both eyes were black and blue and his upper torso and back contained multiple bruises. Mr. Smith was immediately treated and released back into New York City Police Department custody, **Plaintiff's Exhibit B**.

33. After being treated at Kings County Hospital Center Mr. Smith was returned to Brooklyn's 63rd precinct where he was informed that Officer John Doe # 6 had contacted the Internal Affairs Bureau and that investigators from the bureau was at the 63rd precinct and wanted to speak with Mr. Smith.

34. Mr. Smith, through wired jaws and in excruciating pain, did his best to explain to Internal Affairs Bureau Investigators what had occurred prior to their arrival.

35. After Mr. Smith was interviewed by Internal Affairs Investigators, Police Captain John Doe # 1 entered the room and informed the investigators, in Mr. Smith's presence, that Mr. Smith's injuries "were all self inflicted," and that the camera directed at the holding cells did not work.

36. Internal Affairs Investigators informed both Police Captain John Doe # 1 and Mr. Smith that they were aware that those were the claims made by Defendant Fadugba as well.

37. After speaking with Internal Affairs Investigators, Mr. Smith was placed in what appeared to be a storage room or office, alone, at the 63rd precinct and Brooklyn's Central Booking.

38. On January 14, 2009, Mr. Smith appeared before Kings County Criminal Court and plead not guilty to charges accusing him of violating; New York's Vehicle and Traffic Law §§ 1111(D), 1192(1), 1192(3), 511(2)(a), New York's Penal Law § 221.05, Unlawful Possession of Marijuana; and New York City Administrative Code § 10-102(a),

Unlawful Possession or Use of Police Allocated Frequencies. Mr. Smith was released on his own recognizance's.

39. Upon his release from custody, Mr. Smith was informed by his mother, Eileen Johnson, that she had visited Brooklyn's 63rd precinct after his arrest and attempted to locate him but was told by staff at the precinct that he "was in Central Booking."

40. Ms. Johnson visited Central Booking in efforts to locate Mr. Smith and was assured that Mr. Smith was still at Brooklyn's 63rd Precinct. Ms. Johnson was unable to see her son or learn of his condition or whereabouts until his January 14, 2009 release from custody.

41. Mr. Smith ultimately plead guilty to DWAI, a violation, which is not a felony or misdemeanor in New York State and sentencing is January 18, 2012.

42. According to the New York City Police Department's own Internal Affairs Bureau reports from 1992 to 2008, nearly 2,000 New York Police Department Officers were arrested, an average of 119 a year, **see Plaintiff's Exhibit C.**

43. According to the New York City Police Department's own Internal Affairs Bureau reports, most investigations involved drugs, theft or crimes like fraud, bribery or sex offenses, on and off the job..., but cases involving abuse of suspects had risen significantly. The 2006 report noted the "unprecedented" rise and gave an example: several officers followed a woman wanted for petty larceny into a store and one "struck her in the head with his firearm for no reason," **see Plaintiff's Exhibit C-1.**

44. On a monthly basis, the Chief of Internal Affairs meets with the Police Commissioner to brief him on significant cases. Also in attendance is the First Deputy Commissioner, the Chief of Department, the Deputy Commissioner for Legal Matters, the Special Counsel to the Police Commissioner, and Internal Affair's Bureau's Executive Officer. At these

briefings, IAB group commanders present cases selected by the Commission's Executive Director. This past year, briefings covered investigations of perjury, gambling and narcotics operations, criminal association, theft, fraud, and prostitution crime committed by active New York City Police Department Officers.

45. The New York City Civilian Complaint Review Board is an independent agency that is empowered to receive, investigate, hear, make findings and recommend actions on complaints against New York City Police Officers alleging the use of excessive or unnecessary force, abuse of authority, discourtesy, or the use of offensive language. Reports and findings are forwarded to the New York City Police Department Commissioner.

46. In the first half of 2009, the New York City Civilian Complaint Review Board received 4,026 complaints against New York City Police Department Officers alleging excessive use of force, abuse of authority, discourtesy, or use of offensive language.

47. In the twelve month period of 2009, the New York City Civilian Complaint Review Board received a total of 11,431 complaints against New York City Police Department Officers involving allegations of excessive use of force, abuse of authority, discourtesy, or use of offensive language. The number of complaints filed in 2009 was the highest number of complaints against New York City Police Department Officers filed since 1993.

48. In 2009 the New York City Civilian Complaint Review Board found that of 11,431 complaints accusing New York City Police Department Officers of misconduct and/or abuse, Brooklyn residents made up 57% of the alleged victims.

49. In 2009 the New York City Civilian Complaint Review Board found that the New York City Police Department failed to take action in 37% of all cases fully investigated and deemed substantiated by the Civilian Complaint Review Board.

50. Defendant POLICE OFFICER STEVEN FADUGBA, Defendant POLICE SERGEANT PERRY STEWART, Defendant POLICE CAPTAIN JOHN DOE # 1 and POLICE OFFICERS JOHN DOE # 2-5 assaulted Radcliffe Smith on January 13, 2009 acting under the belief that they would remain among the 37% of officers who commit misconduct without penalty.

51. The nature, angles and constitution of the injuries sustained by Mr. Smith is wholly inconsistent with wounds and injuries that are self-inflicted. More important, the New York City Police Department has an obligation to immediately seek medical attention for detainees injured in their care, custody and control.

## THE FIRST CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND
## JOHN DOE(S) 1-5

**(General Allegations, Denial of Due Process, Freedom of Speech, Unlawful Use of Force, Denial of Immediate Medical Attention)**

52. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

53. In committing the acts complained of herein, Defendants acted under the color of state law to deprive Plaintiff of certain constitutionally protected rights under the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution, Article 1§8 of the New York State Constitution, Article 1§ 9 of the New York State Constitution, Article 1§12 of the New York State Constitution, and well settled New York Common Law

which includes, but is not limited to; a) the right to speak freely and petition the government for redress of grievances; b) the right to be free from unreasonable searches and seizures; c) the right to be deprived of liberty without due process of law, d) the right not to be deprived of property without due process of law; e) the right to be free from excessive use of force by persons acting under color of state law; f) the right to just compensation for taking of property.

54. In violating Plaintiff's rights as set forth and other rights that will be proven at trial, Defendants acted under the color of state law and conducted unauthorized, warrantless illegal seizure of Plaintiff's property which set into motion the chain of events that led to an excessive use of force in violation of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States.

55. As a direct and proximate result of the violation of Mr. Smith's constitutional rights by the Defendants, Mr. Smith suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. §§ 1983 and 1981.

56. The conduct of Defendants was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

57. The actions of the Defendants named above violated Radcliffe Smith's rights under both Federal and New York State law. Given the backdrop of assault upon Mr. Smith by officers at the 63rd Precinct, and the blatantly hostile and retaliatory nature of the Defendant's assault upon Mr. Smith, it is clear the Defendants lacked any good faith motivation or objectively reasonable basis to support a legitimate use of reasonable force.

58. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Radcliffe Smith.

59. This conduct on the part of Defendants also represents a violations of 42 U.S.C. §§ 1983 and 1981, given that said actions were undertaken under color of state law.

## THE SECOND CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND
## JOHN DOE(S) 1-5

### -Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983-
### (Use of Excessive Force)

60. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

61. The Defendant, City of New York has adopted policies, procedures, practices and customs within the New York City Police Department that allow, among other things, the use of excessive force when other more reasonable and less drastic methods are available.

62. The actions of Defendant, City of New York amounts to deliberate indifference to the rights of Mr. Smith to be free of excessive force and unreasonable seizures of person and property under the Fourth and Fourteenth Amendments to the Constitution of the United States.

63. As a result of the deliberate indifference to Mr. Smith's rights by the City of New York and its agents, servants and employees, Mr. Smith suffered serious personal injuries and loss of the value of the United States Currency seized from his person, and is entitled to relief under 42 U.S.C. § 1983.

### THE THIRD CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND JOHN DOE(S) 1-5
-Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983-
(Deprivation of Property without Due Process of Law)

64. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

65. Defendant Fadugba in concert with the other Defendants at the scene of the search of Plaintiff's person, seizure of the United States Currency from Plaintiff and ultimate assault upon the Plaintiff's person, intentionally violated the civil rights of the Plaintiff by their malicious and wanton disregard for Plaintiff's property rights. The unlawful taking, failing to voucher and return to Plaintiff the sum of United States Currency seized from his person amounted to the deprivation of property in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

66. Defendant Fadugba and other Defendants listed, either with the specific intent to violate Mr. Smith's civil rights or with a reckless disregard of the probability of causing that violation took a sum of United States Currency from the Plaintiff without vouchering of returning the funds to plaintiff. Plaintiff is therefore entitled to compensatory and punitive damages.

### THE FOURTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND JOHN DOE(S) 1-5
--Violation of Civil Rights Pursuant to Title 42 U.S.C. §§ 1983 & 1981-
(Retaliation for Exercise of Free Speech)

67. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

68. In questioning the actions of the Defendants in taking United States Currency from the Plaintiff while failing to give him a receipt or voucher for the funds, Mr. Smith was engaging in the constitutionally protected activity of free speech and petitioning the government for redress.

69. Mr. Smith's speech was related to matters of public concern and his private property.

70. The Defendant's acts of intimidating, threatening and assaulting Mr. Smith were motivated by Mr. Smith's exercise of constitutionally protected conduct.

71. Defendant's actions caused Mr. Smith to suffer injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity.

72. Defendant's conduct violated clearly established rights belonging to Mr. Smith of which reasonable persons in Defendants position knew or should have known.

73. Defendants acts were done under color of state and/or federal law.

74. Defendant engaged in the conduct described by this Complaint intentionally, knowingly, willfully, wantonly maliciously, and in reckless disregard of Mr. Smith's state and federally protected constitutional rights.

75. Defendant's conduct proximately caused significant injuries, damages and losses to Mr. Smith.

### THE FIFTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND JOHN DOE(S) 1-5
### -CRUEL AND UNUSAL PUNISHMENT-

76. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

77. Under the Fifth and Fourteenth Amendments, states must not deprive detainees of their basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.

78. The Plaintiff's unwarranted assault caused a substantial risk of serious irreparable physical harm and did cause serious psychological harm.

79. The Plaintiff repeatedly communicated his condition to the Defendants by way of mercy pleas, as well as the potential consequences of his being repeatedly beaten; nevertheless, said Defendants reacted with deliberate indifference, continuously beating the Plaintiff until he could not speak with any clarity, putting his life and health at great risk, as well as causing substantial fear and anxiety on the part of the Plaintiff.

80. This conduct on the part of Defendants was a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

81. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Mr. Smith.

82. As a direct and proximate result of the unconstitutional acts described above, the Plaintiff has been irreparably injured.

## THE SIXTH CAUSE OF ACTION
## ON BEHALF OF THE PLAINTIFF AGAINST
## DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND JOHN DOE(S) 1-5
## -GOVERNMENTAL TORT LIABILITY-
### (Negligence)

83. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

84. Each Defendant owed Plaintiff a duty to use due care at or about the times of the aforementioned incident.

85. In committing the aforementioned acts and/or omissions, each Defendant negligently breached said duty to use due care, which directly and proximately resulted in the injuries and damages to the Plaintiff alleged herein.

### THE SEVENTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND
### JOHN DOE(S) 1-5
### -GOVERNMENTAL TORT LIABILITY-
(Negligent in Training and Supervision)

86. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

87. Each Defendant owed Plaintiff a duty to use due care at or about the time of the aforementioned incidents.

88. New York City Police Department Sergeant Stewart Perry and Captain John Doe # 1 negligently supervised Defendants Steven Fadugba, and John Doe # 2-5 by failing to provide proper training and outline the procedures to be followed in logging and returning detainee property.

89. New York City Police Department Sergeant Stewart Perry and Captain John Doe # 1 negligently supervised Defendants Steven Fadugba, and John Doe # 2-5 by failing to provide proper training and outline the procedures to be followed in order to protect the first amendment rights of detainees.

90. New York City Police Department Sergeant Stewart Perry and Captain John Doe # 1 negligently supervised Defendants Steven Fadugba, and John Doe # 2-5 by failing to provide proper training and outline the procedures to be followed in utilizing and

intervening when a uniformed member of the New York City Police Department utilizes excessive force against a subject.

91. In committing the aforementioned acts or omissions, each Defendant negligently breached said duty to use due care, which directly and proximately resulted in the injuries and damages to Plaintiff as alleged herein.

### THE EIGHTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST
### DEFENDANTS CITY OF NEW YORK, FADUGBA, STEWART, AND JOHN DOE(S) 1-5
### -GOVERNMENTAL TORT LIABILITY-
(Conspiracy to violate Plaintiff's Civil Rights)

92. Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 96.

93. The Defendants present at the aforementioned incident subsequently participated in a common design through a concert of actions to protect each of the defendants, by making covertly false statements in their reports and in relaying the circumstances surrounding the aforementioned incident to their superiors and co-workers.

94. In committing the aforementioned acts, each Defendant directly and proximately injured, damaged, libeled and caused emotional distress to the Plaintiff herein.

### DEMAND FOR PUNITIVE DAMAGES

95. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the Defendants for their cruel and uncivilized conduct. The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

96. The Plaintiff hereby demands a trial by jury.

## PRAYERS FOR RELIEF

I. **WHEREFORE**, the above premises considered, Plaintiff demands:

II. That process issue to the Defendants and that they be required to answer in the time permitted by law.

III. That judgment be rendered in favor of the Plaintiffs and against the Defendants on all causes of action asserted herein.

IV. That Plaintiff be awarded those damages to which it may appear they are entitled by the proof submitted in this cause for their physical and mental pain and suffering, both past and future; permanent injury and disability; loss of enjoyment of life; loss of his personalty, United States Currency; and medical and psychological expenses, both past and future.

V. That Plaintiff be awarded punitive damages against the Defendants.

VI. That Plaintiff be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees pursuant to 42 U.S.C. § 1988(b) and (c).

VII. That Plaintiff receive any other relief and general relief to which it may appear they are entitled.

VIII. A jury trial of this matter.

Dated: New York, New York

January 9, 2012

Respectfully Submitted By:

By: _Ryan G. Blanch_
The Blanch Law Firm, P.C.
Ryan G. Blanch, Esq.
261 Madison Avenue, 12 Floor
New York, New York 10016
T:(212) 736-3900
E: Blfecf@blanchpc.com